WHITE STAR BUS LINE, INC., ETC., Plaintiff and Appellee, *v.* GLENS FALLS INDEMNITY CO. ET AL., Defendants and Appellants.

No. 8446.    Argued June 24, 1942.—Decided July 30, 1942.

*José López Baralt* for appellant Glens Falls Indemnity Co.; *Dubón & Ochoteco* for appellants Ortiz and Salgado. *C. Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellee White Star Bus Line, Inc.; *Fiddler, McConnell & González* for appellee's receiver.

Mr. Justice De Jesús delivered the opinion of the court.

About fifteen years ago the Public Service Commission of Puerto Rico granted to the plaintiff-appellee an exclusive franchise for the transportation of passengers between the cities of San Juan and Río Piedras, over certain routes fixed by said commission. In view of the fact that a large number of public vehicles without legal authority were violating appellee's franchise by transporting passengers for hire per seat over the above-mentioned routes, the Public Service Commission, on January 4, 1938, approved a final order which in its pertinent part reads thus:

"It is ordered, furthermore, and by these presents it is prohibited, that all motor vehicles not previously authorized by this Commission act, serve, function or operate as public carriers for the transportation of passengers for hire per seat, offering, rendering or giving its service to the public in general, between the municipalities of San Juan and Río Piedras or within the municipalities of San Juan and Río Piedras, or between intermediate points. The fact that a motor vehicle act as a public carrier, transporting passengers by seat, from one place to another, between the municipalities of San Juan and Río Piedras, or within the municipalities of San Juan or Río Piedras, or between intermediate points, shall constitute *prima facie* evidence of the violation of this order."

Feeling aggrieved by said order, and seeking to review the same, Jaime Ortiz, Juan González, and Alejandro Salgado, defendants herein, on January 21, 1938, appealed to the lower court which in due course dismissed the appeal on the 16th of May following. Four days afterwards they appealed to this court, which affirmed the judgment appealed from on July 26, 1938 (53 P.R.R. 586).

Thereupon the aforesaid three defendants, through their attorneys, Dexter & Dexter, on January 30, 1939, filed a notice of appeal to the United States Circuit Court of Appeals for the First Circuit. They did not confine the appeal to themselves but, contrary to what they had done in resorting to the lower court and to this court, they filed a new notice

of appeal not only on their own behalf, but also on behalf of all the owners and drivers of public service vehicles. This inclusion of the other owners and drivers of public service vehicles was not confined to the notice of appeal. In the affidavit of amount in controversy which was filed by the defendant Juan González it was also stated that he and the other two appellants, Alejandro Salgado and Jaime Ortiz appeared for themselves and for all other owners and drivers of public vehicles similarly situated as they were and who were affected by the judgment of this court and by the order of the Public Service Commission of Puerto Rico. It was further stated that the number of the other persons similarly situated was 300, more or less, and that each of the three defendants and the other appellants were being deprived of a daily income of $5 by the prohibition to operate their vehicles over the above-mentioned routes and that in addition to be subjected to said loss, each of the three defendants and of the 300 other persons were being deprived of the use, value, and investment of the automobiles owned or operated by them, which value and investment represented an average of $1,000, or a total exceeding $5,000.

It was on the basis of said notice of appeal and affidavit of the amount in controversy that Mr. Justice Bingham, of the Circuit Court, on February 8, 1839, issued the following order:

"It is ordered that the appellants file in the Supreme Court of Puerto Rico a cost bond on appeal in the sum of two hundred fifty dollars ($250) and a supersedeas bond in the sum of three thousand dollars ($3,000) with sureties to be approved by said Supreme Court of Puerto Rico."

In accordance with the recitals set forth by the three defendants-appellants in their notice of appeal and affidavit of amount in controversy, the Glens Falls Indemnity Co., which furnished the supersedeas bond, stated therein the following:

"WHEREAS, lately at a session of the United States Circuit Court of Appeals for the first Circuit in the above-entitled cause an appeal was allowed to the said Jaime Ortiz, Alejandro Salgado and Juan González and *others* from the judgment rendered in the above entitled cause against them . . .

"*       *       *       *       *       *       *

"Now, the condition of the above obligation is such, that if the same Jaime Ortiz, Alejandro Salgado and Juan González *and others* shall prosecute their appeal. . ." (Italics ours.)

After the bond had been approved, the police officers continued to file criminal complaints against the owners and drivers of public vehicles—with the exception of the three defendants-appellants—who violated the order of the Commission, and thereupon defendants' counsel, Attorneys Dexter & Dexter, addressed a communication to Mr. Orbeta, Chief of the Insular Police, wherein they complained that the policemen were arresting drivers of public vehicles for alleged violations of the order of the Public Service Commission of Puerto Rico of January 4, 1938, and after referring to the order and the supersedeas bond, they said:

"As this action of the Police must be the result of a misunderstanding or ignorance of the supersedeas and suspension of such order of the Public Service Commission by the United States Circuit Court of Appeals and is in violation thereof, in behalf of the Appellants above named *and of all other drivers and owners of public cars who are indirect parties in the appeal, we as their attorneys,* respectfully call your attention to this action of the Police in order that you may correct it and thus avoid ulterior complication and conflict with the authority of the United States Circuit Court of Appeals." (Italics ours.)

In conformity with the said communication the Chief of Police issued the corresponding orders not to arrest the owners or drivers of vehicles who violated the above-mentioned order. In view of the serious prejudice which the order of the Chief of Police caused to the appellee, the latter applied to the Circuit Court, and Mr. Justice Bingham

himself, on March 29, 1939, decided to limit the effect of the order of supersedeas as follows:

"Upon consideration of the Motion to vacate supersedeas Order and Bond, filed by appellee herein, White Star Bus Line Inc., and upon consideration of the objections thereto, filed by appellants herein, it is ordered that the supersedeas order granted herein on February 8, 1939, shall apply to, but shall be limited in its effects to, only the three original appellants in the District Court, namely, Jaime Ortiz, Alejandro Salgado and Juan González, as operators of any vehicles owned by them on February 8, 1939, . . .

"It is further ordered that said supersedeas order shall not stay or suspend the Order of the Public Service Commission of Puerto Rico, dated January 4, 1938, as to any other person whatsoever."

On April 1, 1939, the appellants, through their counsel, filed a lengthy motion in the Circuit Court of Appeals praying that the order of Mr. Justice Bingham of March 29, 1939, be reviewed by the court in bank in order to modify and enlarge the same so that it extend to all the owners and drivers of public vehicles who constituted the same class as were the three appellants "who desire to provide cheap and adequate transportation facilities between the cities of San Juan and Río Piedras." (Plaintiff's Ex. 10, Tr. of Ev., p. 264.)

The Circuit Court refused to grant the appellants' request, and the prohibition against the other owners of public vehicles was allowed to stand.

Subsequently, the Circuit Court of Appeals dismissed the appeal, and thereupon the appellee, White Star Bus Line, Inc., brought the present action in the lower court against Glens Falls Indemnity Co., as surety and Jaime Ortiz, Juan González, and Alejandro Salgado, as principals, and joined the Public Service Commission of Puerto Rico as a party defendant inasmuch as the latter, although a necessary party, refused to join the plaintiff in the suit. In the action claim was made for $15,400, as damages, alleged to have been sustained by the plaintiff during the period in which the final order of the commission had been suspended as to all own-

ers and drivers of public vehicles, that is, from March 15, 1939, when the Insular Chief of Police instructed his subordinates not to file any complaints for violation of the final order, until the 29th of the same month when the scope of the order of supersedeas was limited. After a trial of the case on the merits, the judgment appealed from was rendered adjuging the defendants, with the exception of the Public Service Commission, to pay jointly and severally to the plaintiff the sum of $8,572.90, as damages, limiting the liability of the surety to the amount of the bond—$3,000—and further adjuging said defendants to pay the sum of $200 as costs and attorney's fees.

It was from said judgment that the three defendants and the surety company took the present appeal. The essential questions to be decided are: (1) Are the defendants-appellants liable for the damages caused to the plaintiff by the 300 other owners or drivers of the public vehicles who violated the order of the commission during the 14 days above mentioned? (2) Did the lower court err in fixing the amount of the damages?

█ Contrary to what appears from the documentary evidence to which we have referred, the appellants now maintain that the final order was never suspended, and they deny all liability for the unlawful acts of the 300 other owners and drivers of public vehicles, with whose supposed rights they solicitously dealt in the notice of appeal, in the affidavit of amount in controversy, in the communication to the Insular Chief of Police, in their opposition to the modification of the order of supersedeas, and finally in their motion seeking a review by the court in bank of the amended order rendered by Mr. Justice Bingham.

The relation of cause and effect between the acts of the appellants herein and the damages caused by them through the 300 other owners and drivers is so manifest that we fail to understand how it could be seriously maintained that said

acts did not constitute the proximate cause of the damages complained of. Nor may the surety company avoid its liability for such damages up to the amount of the bond. In that document it was stated, not once but twice, that the bond answered for any damages caused by "Jaime Ortiz, Alejandro Salgado and Juan González *and others.*" How can it be accepted, as claimed by the surety company, that the phrase "and others," placed after the names of the appellants, means nothing, especially when in the notice of appeal, and in the affidavit of amount in controversy—both which documents bear a prior date than the bond—it is expressly and definitely stated that the appeal is taken not only for the three defendants above mentioned, but also for 300 other persons similarly situated as they were? The surety company was aware of this. No surety subscribes a bond without first ascertaining the obligation to be secured, and, if contrary to what it should have done, the company failed to examine the corresponding documents, it then assumed a risk for which it, and it alone, must answer.

The surety company maintains that, conceding as it does the validity and enforcibility of the bond, the latter can only cover the three persons whose names are stated therein and no one else, and that the words "and others" do not have nor can have any legal effect, for the simple reason that the appeals taken in this suit, at its various stages, as a matter of law, were filed by said three defendants. It is true that the appeals taken to the lower court and to this court were instituted by said three defendants only, but it is no less true that in the one taken to the Circuit Court the three defendants knowingly and falsely stated that the appeal was taken for themselves and for the 300 defendants, thereby inducing the court to believe that a class suit was involved; and on the basis of those false statements that court issued the supersedeas upon a bond which the appellant company furnished, binding itself for the three defendants *and others*

in accordance with the notice of appeal and with the above-mentioned affidavit. Who were these others but the three hundred persons who formed the class supposedly injured by the order of the commission? The fact that those persons were not entitled to appeal, since they were not parties to the suit in the insular courts, does not relieve the surety from liability, which surety, pursuant to the notice of appeal, included them in the bond; but apart from its direct liability for those 300 persons, the surety company is always liable because the fact can not be overlooked that the illegal acts of said persons were induced and instigated by the acts of the three defendants within this suit. It is true that the original supersedeas order failed to mention expressly the 300 owners and drivers, such express mention being unnecessary. According to the notice of the appeal taken to the Circuit Court, said persons constituted a class, they were appellants, and to them reference was made in said order when it provided: "It is ordered *that the appellants* file in the Supreme Court of Puerto Rico a cost bond, etc." The purpose of the order of supersedeas was to stay the execution of the judgment, pending the prosecution of the appeal, and this was done. It was after the damages began to be caused that the Circuit Court, upon learning of the false statements made by the appellants, clarified its order and limited the effects thereof in the manner already mentioned. The case of *Avilés* v. *Sons of Rafael Toro et al.*, 27 P.R.R. 616, cited by the appellants, does not favor their contention. In so far as now pertinent, the holding in that case was that all that the bond may include which is not required by the statute, must be considered as eliminated, and all that is omitted which should have been recited must be considered as included. A supersedeas bond, in accordance with the law, answers for any damages which may be caused to the defendant by reason of the suspension of the judgment, and here the company undertook to pay those damages not only

on behalf of the three individuals, but also on behalf of the supposed class. It is obvious that the latter were not entitled to appeal; but the fact is that they appealed, that the court deemed them to be appellants, that the company included them in its bond, and that damages were caused to the apellee. Irrespective of any right on their part to appeal, the surety answers for the damages caused.

Let us now proceed to consider the second question raised, namely, the amount of the damages. In this connection §1059 of the Civil Code, 1930 ed., provides that the payment of damages shall include not only the amount of the loss which may have been suffered but also that of the profit which the creditor may have failed to realize. In order to prove the profit which it failed to realize, the appellee showed that during the 14 days preceding a similar period throughout which the final order was totally suspended, it transported an average of 79,238 passengers daily, whereas during the suspension of the order it only transported an average of 66,991 passengers, the expenses being identical in both periods, inasmuch as the same number of buses were in operation. In accordance with that evidence, the appellee failed to transport 12,247 passengers daily during that 14-day period and as the passenger fare is five cents, the loss of profit sustained by the defendant amounted to $8,572.90. The number of passengers transported during the 14 days immediately following the supension period was greater than that pertaining to the latter period and somewhat less than the one preceding the suspension order. The appellants maintain that for the purpose of computing the damages that number, that is, the one pertaining to the period subsequent to the suspension, should have been taken into consideration; but, as very aptly said by counsel for the appellee, said period should not be so considered because it was doubtedly affected by the abnormal situation created by reason of the total suspension of the final order.

■ The appellants argue that the damages in this case awarded by the court a quo are uncertain and speculative. The existence of the damages proper should not be confused with the mode of determining the amount thereof. The action for personal injury has existed every since the beginning of the Common Law, and the action for wrongful death has existed in England ever since the passage of the famous statute known as Lord Campbell's Act in 1846. No one has hitherto successfully maintained that the damages claimed in actions of this kind are uncertain or speculative. Yet, is there any one who can determine with absolute certainty the amount of the indemnity that should be paid for the loss of a life or an important member of the human body? What matters is that the existence of the damage should not be uncertain or speculative. Once it has been shown that the damages exist and that their proximate cause was an act or omission on the part of the defendant, it can not be said that the same are uncertain or speculative. It does not matter that the determination of the amount thereof may be only approximate, provided that it rests on a reasonable basis and not on mere speculation, or guess. *Story Parchment Co.* v. *Paterson Parchment Paper Co.* (1931) 282 U. S. 555, 75 L. ed. 544; *Palmer* v. *Connecticut Ry. Co.*, 311 U. S. 544 (1940); and *Eastman Kodak Co.* v. *Southern Photo Materials Co.* (1927) 273 U. S. 359, 71 L. ed. 684, where it was said that a defendent whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they can not be measured with the same exactness and precision as would otherwise be possible. And in *Story Parchment Co.* v. *Paterson Parchment Paper Co., supra,* there was quoted with approval from *Gilbert* v. *Kennedy,* 22 Mich. 117, 129, as follows:

"Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own

840

wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced; . . ."

We think that it can not be disputed that damages were caused to the appellee and that the proximate cause thereof was the conduct of the defendants, and similarly as to the justice and reasonableness of the method adopted for determining the amount of such damages, which method finds support in the decision of the Supreme Court of the United States in *Palmer* v. *Connecticut Ry. Co., supra.*

For the reasons stated the judgment appealed from should be affirmed.

Mr. Justice Travieso did not participate herein.